SPENCER v. THE DALLES, P. & A. NAVIGATION CO.

(Circuit Court of Appeals, Ninth Circuit.  July 10, 1911.)

No. 1,890.

1. COLLISION (§ 51*)—OVERTAKING VESSELS—MUTUAL DUTIES.

It is the duty of an overtaking vessel to keep out of the way of the overtaken vessel, and the correlative duty of the leading vessel to keep her course and avoid any maneuver calculated to embarrass the overtaking vessel in passing.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 57–61; Dec. Dig. § 51.*]

2. COLLISION (§ 105*)—OVERTAKING VESSELS—FAULT OF OVERTAKING VESSEL.

The finding of the trial court that a collision between two steamers passing down the Willamette river from Portland, which occurred when one vessel was attempting to pass the other, was due solely to the fault of the overtaking vessel, affirmed, where such finding was made on conflicting evidence, and in view of the burden of proof resting on the overtaking vessel and her duty under the rules to keep out of the way, it being shown that there was ample room for her to do so.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 105.*

Overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

Appeal from the District Court of the United States for the District of Oregon.

Libel in admiralty by The Dalles, Portland & Astoria Navigation Company, a corporation, against E. W. Spencer, claimant and owner of the steamer Charles R. Spencer, to recover damages suffered by the Dalles City, a steamboat owned by the libelant, in a collision with the Charles R. Spencer, on the Willamette river upon the 31st day of May, 1905.  The District Court rendered a decree (178 Fed. 862) for the libelant in the sum of $6,020.03, from which the respondent appeals to this court.  Affirmed.

Coovert & Stapleton and Richard W. Montague, for appellant.

Williams, Wood & Linthicum, Carey & Kerr, and Harrison Allen (Erskine Wood, on the brief), for appellee.

Before MORROW, Circuit Judge, and HANFORD and DIETRICH, District Judges.

DIETRICH, District Judge.  This controversy grows out of a collision which occurred between two river steamboats, the Dalles City and the Charles R. Spencer, upon the Willamette river, a short distance above its mouth, on the 31st day of May, 1905.  The boats were plying between Portland and The Dalles, and belonged to opposition lines which were aggressively competing for the passenger business of the two terminal cities and intermediate points along the Willamette and Columbia rivers.  The first to arrive at any place along the route where passengers were received secured the larger part of the business, and, both boats being scheduled to leave Portland at the same hour, speed became an important consideration.  The Charles R. Spencer was the larger, more powerful, and swifter craft, and, with

equal opportunity, could outstrip her rival. Upon the morning in question, they left the Portland docks at about 7 o'clock, the Dalles City passing out through the drawbridges a few hundred feet ahead of the Charles R. Spencer. A struggle at once began, the Charles R. Spencer seeking by her superior speed to pass her competitor, and the Dalles City to maintain the advantage that she had secured in making the start. The Dalles City was apparently under a full head of steam, and moved at the rate of 17 or 18 miles an hour. The Charles R. Spencer, necessarily following practically the same course, pushed close up in her wake, and two or three times essayed to pass, but without avail. Here arises the first substantial conflict in the testimony. Upon behalf of the Charles R. Spencer it is charged that her failures to pass were due to the "jockeying" maneuvers of the Dalles City in swinging across her course from time to time, and thus crowding her out. The charge is denied by the libelant, who puts forth the theory that the difference in speed of the two vessels was at the time insufficient to enable the Charles R. Spencer to climb the swell left by the Dalles City and make the detour which an overtaking vessel must necessarily make in safely passing to the leading position. However that may be, the relative positions of the two vessels remained substantially unchanged for approximately 30 minutes, and until just before the collision occurred. Then the Charles R. Spencer, being at the time close astern of the Dalles City, but a little upon her port quarter, resolved to pass upon her starboard. Accordingly, veering to the right and having called for and received consent to pass, she swung across the course of the Dalles City from 50 to 100 feet in her wake. Upon what followed the evidence is highly conflicting, and the whole case turns. The libelant's version is that immediately upon crossing over, the Charles R. Spencer, either willfully or with gross carelessness, put her wheel hard to port and thus came into contact with the Dalles City. Upon the other hand, upon behalf of the Charles R. Spencer, it is contended that as she lapped up on the starboard quarter of the Dalles City, the latter, to keep her from passing, deliberately swerved to the right, thus intercepting her course and bringing the two vessels into collision.

That which admittedly happened is quickly told. At the time the Charles R. Spencer passed to the right of the Dalles City, the former was running at a speed of about 19 miles an hour, and the latter 17 miles an hour. In a moment of time the prow of the Charles R. Spencer struck the Dalles City a few feet forward from the stern, upon the starboard side. The collision was accompanied with no perceptible shock, but by reason of the greater weight and speed of the Charles R. Spencer and the fact that the two vessels were at the time pursuing divergent courses, the stern of the Dalles City was carried around until she lay almost directly athwart the course of the Charles R. Spencer. In this position she was unable readily to yield to the momentum of the other boat, and, as a result, she careened heavily to port, the bow of the Charles R. Spencer crushed through her guard rail and broke her pitman shaft, and thereupon both the cylinder heads of her engine were blown out, and other damage en-

sued. By the time the Charles R. Spencer had succeeded in stopping her engines, the Dalles City had turned or had been turned entirely around, and lay with her bow to the stern of the Charles R. Spencer, and upon the starboard side.

The decision of the lower court was in favor of the libelant, and the respondent brings this appeal. In form a number of errors are assigned, but in reality only the findings of fact by which the Charles R. Spencer alone is held to be responsible for the collision, are assailed.

[1] The controlling principles of law are simple, and, being uncontroverted, may be stated, but need not be discussed. By rule 6 of the Pilot Rules for the Inland Waters of the Atlantic and Pacific Coasts (Edition of August 20, 1908), it is provided that when steam vessels are running in the same direction, the one astern, if she shall desire to pass on the right or starboard hand of the vessel ahead, shall give one short blast of the steam whistle, and the vessel ahead shall signify her consent by a similar blast. Admittedly this provision of the rule was complied with by both vessels, and at the point where consent to pass was asked for and given there was ample room in the river to pass in safety upon the starboard, if not upon the port, side of the leading vessel. Having obtained the assent of the Dalles City to pass, it became the duty of the Charles R. Spencer, as the overtaking vessel, to keep out of the way of the Dalles City, the vessel overtaken. Upon the other hand, while the Dalles City, as the leading vessel, had the right of way, and was not bound to yield to the convenience of the Charles R. Spencer, it was her correlative duty to refrain from willfully changing her course so as to cross the path of the Charles R. Spencer. By pilot rule 6, above referred to, it is expressly provided that "the vessel ahead shall in no case attempt to cross the bow or crowd upon the course of the passing vessel"; and it may be stated as a general rule of maritime law that the vessel ahead is bound to refrain from any maneuvers calculated to embarrass the overtaking vessel while attempting to pass. Whitridge v. Dill, 23 How. 448, 16 L. Ed. 581. Making specific application of these principles, it was the duty of the Charles R. Spencer, in passing, to give to the Dalles City a wide enough berth to avoid collision, and it was the correlative duty of the Dalles City to refrain from changing her course or maneuvering in such a way as to embarrass her rival. Moreover, the duty of avoiding collision being imposed by law primarily upon the overtaking vessel, the burden of proof was in this case cast upon the Charles R. Spencer to show that she acted prudently, and that the collision was not caused by any fault upon her part. Spencer on Marine Collisions, § 69. It is further well established that if the collision was due to the concurring negligence of both vessels, the damages suffered should be divided equally between the two. The Schooner Catharine v. Dickinson, 17 How. 170, 15 L. Ed. 233; The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586.

[2] No useful purpose could be subserved by an extended discussion here of the question of fact whether the Charles R. Spencer or the Dalles City was the more to blame for the collision. The most that can be said for the appellant is that the voluminous testimony is highly

conflicting, and that it is entirely possible to take the view that the Dalles City was wholly at fault, or that the Charles R. Spencer was alone responsible for the accident, or that the negligence of both vessels contributed thereto. We have the testimony of a number of witnesses in support of any one of the three possible views, and there is nothing inherently improbable in any of the theories, nor is there any admitted or incontrovertible fact or circumstance which is wholly inconsistent with any one of such theories. It is clearly a case of conflicting oral testimony, where it cannot be said that there is a strong preponderance with either party. The District Judge heard the witnesses testify, and observed their demeanor while upon the stand. His finding upon the conflicting evidence was that the Charles R. Spencer alone was responsible for the collision, and that the Dalles City was wholly without fault. Under the well-settled rules of appellate procedure, the finding ought not, under the circumstances, to be disturbed. In The Alijandro, 56 Fed. 621, 6 C. C. A. 54, we have said:

"The rule is well settled that in cases on appeal in admiralty, when the questions of fact are dependent upon conflicting evidence, the decision of the District Judge, who had the opportunity of seeing the witnesses and judging their appearance, manner, and credibility will not be reversed unless it clearly appears that the decision is against the evidence. The Albany (C. C.) 48 Fed. 565, and authorities there cited."

See, also, Gaffner v. Pigott, 116 Fed. 486, 54 C. C. A. 641.; The S. S. Wilhelm, 59 Fed. 169, 8 C. C. A. 72.

There being no other question for consideration, it follows that the judgment must be affirmed, with costs to the appellee.