ACCEPTED
03-15-00313-CV
7348089
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/13/2015 11:42:05 AM
JEFFREY D. KYLE
CLERK

## CASE NO. 03-15-00313-CV

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/13/2015 11:42:05 AM

JEFFREY D. KYLE
Clerk

# IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN

_____

## HERMENIA JENKINS ,
*Appellant*

### v.

## CROSBY INDEPENDENT SCHOOL DISTRICT, and
## MICHAEL L. WILLIAMS, COMMISSIONER OF EDUCATION,
*Appellees*

_____

Appealed from the 200th Judicial District of Travis County, Texas
Cause No. D-1-GN-14-000619
*Jenkins v. Crosby Indep. Sch. Dist. and Michael L. Williams*
The Honorable Amy Clark Meachum presiding

_____

## APPELLANT'S REPLY BRIEF

_____

Kevin F. Lungwitz      State Bar No. 12698790
Elizabeth Poole      State Bar No. 24051201
The Lungwitz Law Firm, P.C.
3005 S. Lamar Blvd.
Box D-109-362
Austin, Texas 78704-4785
P. 512.461.0188
F. 866.739.7138
Kevin@LungwitzLaw.com
Elizabeth@LungwitzLaw.com
Attorneys for Appellant Hermenia Jenkins

**ORAL ARGUMENT REQUESTED**                    October 13, 2015

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND ATTORNEYS ......................................................1

TABLE OF CONTENTS ...........................................................................2

INDEX OF AUTHORITIES ......................................................................3

REPLY POINTS ......................................................................................5

    1. **Jenkins' contract should have been repaired to her benefit, not to the benefit of the CISD.** ................................................................5

    2. **The commissioner's ruling contradicts the plain language of §§21.201 and 21.206. Principal is different than administrator and supervisor.** ....................................................................................7

    3. **Appellees exaggerate the effects of Jenkins' case. This case would not overturn decades of precedent. The legislature has not acquiesced in the commissioner's decision.** ...............................12

    4. **Appellees misstate facts regarding Jenkins' duties as a high school assistant principal and whether Jenkins waived the *Barich* issue.**.........15

    5. **Crosby ISD's argument that Jenkins' claim "does not involve an expiring contract" thus rendering §21.206 inapplicable, is without merit and has been waived by CISD.** .......................................20

PRAYER ...............................................................................................23

CERTIFICATE OF COMPLIANCE ........................................................24

CERTIFICATE OF SERVICE ...............................................................25

TABLE OF APPENDICES ....................................................................26

# INDEX OF AUTHORITIES

**Texas Cases**:

*First Am. Title Ins. Co. v. Combs*, 258 S.W. 3d 627 (Tex. 2008) ...........................7

**Commissioner of Education Decisions**:

*Barich v. San Felipe-Del Rio Cons. Indep. Sch. Dist.*,
  Tex. Educ. Agency Docket No. 117-R1a-484
  (Comm'r Educ. 1985) ........................................................14, 15, 17, 18, 20

*Carpenter v. Wichita Falls Indep. Sch. Dist.*,
  Tex. Educ. Agency Docket No. 247-R3-491 (Comm'r Educ. 1993) ...........10

*Chilton v. Alvin Indep. Sch. Dist.*,
  Tex. Educ. Agency Docket No. 031-R10-0107 (Comm'r Educ. 2009) .......16

*Higereda v. Valley View Indep. Sch. Dist.*,
   Tex. Educ. Agency Docket No. 027-R10-12-2013 (Comm'r Educ. 2014)  16

*Jenkins v. Crosby Indep. Sch. Dist.*,
  Tex. Educ. Agency Docket No. 043-R10-1211
  (Comm'r Educ. 2013) ................................................................13, 15, 22

*Montgomery v. Richardson Indep. Sch. Dist.*, Tex. Educ. Agency
  Docket No. 007-R10-1008 (Comm'r Educ. 2012)  ........................................9

*Pasqua v. Fort Stockton Indep. Sch. Dist.*,
  Tex. Educ. Agency Docket No. 011-R3-1102 (Comm'r Educ. 2002) .........13

*Underwood v. West Rusk Co. Consolid. Indep. Sch. Dist.*,
  Tex. Educ. Agency Docket No. 062-R3-198 (Comm'r Educ. 1998) ...........13

Texas Statutes and Administrative Code:

Tex. Educ. Code §7.064(a) ........................................................................ 11

Tex. Educ. Code §7.057(a) ........................................................................ 22

Tex. Educ. Code Chapter 21 ................................................................... 5, 14

Tex. Educ. Code Chapter 21, Subchapter E ........................................... 9, 12

Tex. Educ. Code §21.002 ................................................................... 5, 8, 9

Tex. Educ. Code §21.003 ......................................................................... 12

Tex. Educ. Code §21.101(1) .................................................................... 11

Tex. Educ. Code §21.201 .......................................... 5, 7, 8, 9,11, 13, 14, 15

Tex. Educ. Code §21.201(1) .................................................................... 11

Tex. Educ. Code §21.206 .....................5, 6, 7, 8, 12, 13, 14, 15, 20, 21, 22

Tex. Educ. Code §21.210 ..........................................................................21

Tex. Educ. Code §21.354 ..........................................................................10

Tex. Educ. Code §21.3541 ........................................................................10

Tex. Educ. Code §21.355 ..........................................................................11

Tex. Educ. Code §22.051 ..........................................................................12

19 Tex. Admin. Code §150.1021 ...............................................................10

19 Tex. Admin. Code §150.1022 ...............................................................10

19 Tex. Admin. Code §157.1059(d) ...........................................................22

19 Tex. Admin. Code §157.1061(a) ...........................................................22

19 Tex. Admin. Code §241.20 (3) ...............................................................6

19 Tex. Admin. Code Chapter 229 .............................................................10

19 Tex. Admin. Code §229.3 ......................................................................11

## REPLY POINT ONE

**Jenkins' contract should have been repaired to her benefit, not to the benefit of the CISD.**

This issue is separate from the §§21.201 and 21.206 arguments in this case. This Court could rule that Jenkins' ambiguous contract was for "principal," without confronting the statutory issues. Neither appellee responded to Jenkins arguments regarding Texas Education Code §21.002(a), which says:

> A school district shall employ each classroom teacher, *principal*, librarian, nurse, or school counselor under … a term contract, as provided by Subchapter E.

(emphasis added) (Jenkins' brief p. 27)  A principal is entitled to a contract.  An "administrator" is not statutorily entitled to a contract, though the school board may offer contracts to whomever it chooses.  As a generic administrator, Jenkins has lost the benefit and protection of this statute without receiving any quasi-due-process protection guaranteed by Texas Education Code Chapter 21.

The commissioner's brief muddies the contract analysis by enunciating a new test:  If the contract position is ambiguous, the boilerplate reassignment clause in the contract and the superintendent's authority gives the district the unrestrained right to reassign, as long as the employee is certified in the new position.  (Comm'r brief, p. 32)  Since every principal is certified to be an assistant principal, but also certified to teach, this is obviously problematic, and not such a workable solution.

See Title 19 Tex. Admin. Code §241.20 (3). Likewise, both appellees rely on the boilerplate language of the contract that says the employee is subject to reassignment into *any* position the employee is certified *or* qualified to perform. (CISD brief p. 30) If contract language controlled, an employee could be reassigned to any position.

The CISD and commissioner never acknowledge in their briefs that §21.206 has always tempered the reassignment clause of a school employment contract. No matter the contract language, an employee to whom §21.206 applies may not be reassigned outside of her "professional capacity." Similarly, a superintendent's statutory authority does not extend to reassigning an employee to whom §21.206 applies outside of her professional capacity. The CISD and commissioner cannot seriously dispute this legal restriction on reassignments.

Nor does either appellee respond to or dispute that the ambiguous, boilerplate contract should be construed against the school district author, as Jenkins argued in her brief. (Jenkins' brief p. 28) With respect to the parties' intentions, Ms. Jenkins certainly believed she signed a contract to be principal for the 2011-13 school years, as she told the school board in October 2011 at her grievance hearing:

> On June 28, months after *I signed a new two-year contract to lead Drew Intermediate School as principal* for the 2011/13 school year, Dr. Moore removed me as principal and reassigned me to an A.P. at C.H.S.

I cannot imagine what transpired in those months to warrant such a drastic action.

(R. 260, local transcript, p. 20)

As *amicus* TASB writes, "a 'professional capacity' may be defined by contractual agreement," even if the professional capacity does not exist in §21.201. (TASB brief pp. 26-27) In other words, an employee and the school district may contract for a *narrower* job title or professional capacity than listed in §21.201. Jenkins agrees that §21.201 is a floor and not a ceiling with respect to professional capacities.

Therefore a contract for "principal" is harmonious with this analysis, because "principal" is specifically listed in §21.201, and it gives Jenkins the benefit of her bargain. Finally, the reassignment provision in the contract referred to by the commissioner and CISD is still effective: Jenkins can indeed be reassigned as principal of another campus in the district.

## REPLY POINT TWO

**The commissioner's ruling contradicts the plain language of §§21.201 and 21.206. Principal is different than administrator and supervisor.**

The commissioner is not owed deference when his interpretations contradict the plain language of a non-technical statute. *First Am. Title Ins. Co. v. Combs*, 258 S.W. 3d 627, 631 (Tex. 2008) There is nothing ambiguous about §21.201 that

begins, "In this subchapter … 'teacher' means … principal …" Applying the unambiguous law to the undisputed facts in this case, Principal Jenkins must be employed in the same professional capacity from year to year, unless the district gives her the quasi-due-process rights afforded by the term contract nonrenewal laws. The commissioner has already opined that superintendents, teachers, counselors, librarians, nurses are entitled to these rights as they are each listed in §21.201. This case only addresses the position of "principal," the only specific position in §21.201 that is omitted from the commissioner's consideration in §21.206.

When a teacher signs his contract in the spring, he knows he will be a teacher in the fall. He might teach at a different campus, or teach a different grade or subject; but he will be a teacher. When a nurse signs her contract in the spring, she knows she will be a nurse in the fall, subject to a geographical reassignment. The same is true for a librarian, counselor and superintendent. Regardless of contract language or the superintendent's authority, §21.206 guarantees this and appellees do not dispute it.

A principal must be employed under a written contract, whereas a generic administrator has no such guarantee. Tex. Educ. Code §21.002. But when a principal signs her contract in the spring, she is immediately at risk of losing this legal right and the benefit of her bargain because she is considered to be a generic

administrator by the school district and the commissioner. She might be an assistant principal. She might be something as vague as "program specialist II" which may or may not be a certified position; may or may not be a contract position; and which has no definition in law. See *Montgomery v. Richardson Indep. Sch. Dist.*, TEA Docket No. 007-R10-1008 (Comm'r Educ. 2012) (Appx. 3, affirming reassignment from principal to "program specialist II.") Jenkins certainly lost the benefit of her bargain when she signed a contract as middle school principal in the spring of 2011, and returned to school in the fall as one of four high school assistant principals.

The commissioner says the Texas Education Code mentions administrator multiple times outside of Chapter 21, Subchapter E. (Comm'r brief, pp. 8-10) There is no need go outside Texas Education Code Chapter 21, Subchapter E where the introductory phrase of §21.201 says, "In this subchapter 'teacher' means … principal ..." But if one ventures outside of Chapter 21, Subchapter E, administrator is more conspicuous by its absence. According to Tex. Educ. Code §21.002, a principal is entitled to a contract, but an "administrator" is not. Neither is a "program specialist II." By reassigning a principal into a generic administrator position such as assistant principal, a school district can remove a principal from her contract without any quasi-due-process protections guaranteed by law.

Appellees mischaracterize Jenkins' case as one questioning the legitimacy of the administrator capacity. Of course, administrators exist in fact and in law. But it is a term even the commissioner of education has described as "generic." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, Docket No. 0247-R3-491 (Tex. Comm'r Educ. 1993) (Jenkins' brief, Appx. 8). Principal, by its distinct and specialized treatment in the law, is a specialized subset of administrator.

Proving Jenkins' point, the commissioner reminds us that state law previously heaped all administrators together for evaluation purposes, but now has segregated principal evaluations from all other administrator evaluations. (commissioners brief p. 9, citing Tex. Educ Code §§21.354 and 21.3541.) Moreover, the TEA regulations in place before and after the facts of this case refine the administrator evaluation process and distinguish between superintendent, principal, and all other administrators. (Title 19 Tex. Admin. Code §§150.1021; 150.1022) (Appx. 4)

*Amicus* TASB claims that administrator is defined in state regulations as specifically including principals and assistant principals. (TASB brief, p. 18, citing 19 Tex. Admin. Code Chap. 229.) This is misleading. The TASB citation is to a very specific regulation regarding data collection for educator preparation programs and has nothing to do with contract reassignments. The full definition, which TASB omits, says an administrator is, *"For purposes of the surveys and*

*information required by this chapter*, an educator whose certification would entitle him or her to be assigned as a principal or assistant principal …" (emphasis added)

In that same chapter, "principal" is repeatedly distinguished from "administrator." (See Title 19 Tex. Admin. Code. §229.3 for a variety of examples: "… *school principals and administrators* … shall provide … data and information required by this chapter; "the *school administrator and principal* …"; "*Principals or designated administrators* ….") (Appx. 4, emphases added) This further demonstrates that a principal is not a generic administrator, because it is distinguished in the law.

The commissioner has confused "administrator" with "supervisor." Section 21.201 does not use "administrator," though it does use "supervisor." The Texas Education Code distinguishes between principal and a generic supervisor (emphases and brackets added on the following):

- Section 7.064(a). The commissioner shall develop an online survey to be administered statewide at least biennially to superintendents, *principals, supervisors,* classroom teachers, counselors, and other appropriate full-time professional employees who are required to hold a certificate issued under Subchapter B, Chapter 21.

- Sections 21.101(1) and 21.201(1): "Teacher" means a superintendent, *principal, supervisor*, classroom teacher, counselor, or other full-time professional employee who is required to hold a certificate issued under Subchapter B, or a nurse. (emphasis added)

- Section 22.051(a). [Describing which school district employees are entitled to statutory immunity from negligence claims] In this

subchapter, "professional employee of a school district" includes: a superintendent, *principal,* teacher, including a substitute teacher, *supervisor*, social worker, school counselor, nurse, and teacher's aide employed by a school district …;

(brackets added) If one were to search beyond Chapter 21, Subchapter E, as the commissioner suggests, one must conclude that "principal" is almost always distinguished from "administrator" and "supervisor." The only exceptions are where the law applies to *every* administrator, including principals, superintendents, and generic administrators. (See Tex. Educ. Code §§21.003 requiring the certification of all administrators; See §21.355 rendering all administrator evaluations confidential.)

## REPLY POINT THREE

**Appellees exaggerate the effects of Jenkins' case. This case would not overturn decades of precedent. The legislature has not acquiesced in the commissioner's decision.**

Crosby ISD mischaracterizes Jenkins case as "once a principal, always a principal." (CISD brief pp. 11; 32-33) To be clear, Jenkins desires quasi-due-process protections guaranteed to her by law before she is reassigned outside of her professional capacity, as required by §21.206. She is not entitled to tenure as principal, nor has she argued this.

Appellees posit that adding principal to the list of professional capacities in §21.206 would overturn 30 years of precedent. The commissioner told the Court

below that he, "has repeatedly held that a principal and assistant principal are in the same professional capacity … The Court should not overturn nearly 30 years of precedent." (Clerk's record p. 239; commissioner's trial brief, p. 9) The CISD told the Court below that "… the Commissioner has issued a number of decisions finding that a principal was appropriately reassigned to an assistant principal position …" (Clerk's record p. 284; CISD trial brief p. 16)

Both appellees greatly mischaracterize the commissioner's jurisprudence. In reality, prior to Jenkins filing her case with the commissioner in 2011, the commissioner had issued *only one decision* which specifically addressed a principal to assistant principal reassignment. *Pasqua v. Fort Stockton Indep. Sch. Dist.*, TEA Docket No. 011-R3-1102 (Comm'r Educ. 2002) (CISD brief, Tab 7). In that case, the principal argued that his reassignment to assistant principal violated due process, the district's duty of good faith and fair dealing, the Open Meetings Act, and was constructive discharge. *Pasqua* provides no analysis of §§21.201 and 21.206, or "same professional capacity." Further, in *Pasqua* no claim was made about an ambiguous job title in the contract, as in the case at bar.

In another case previous to *Jenkins*, the commissioner approved a reassignment of a principal to another principal position. *Underwood v. West Rusk Co. Consolid. Indep. Sch. Dist.*, Docket No. 062-R3-198 (Comm'r Educ. 1998) (CISD brief Tab 8) The commissioner erroneously states that *Underwood* is a

principal to assistant principal reassignment. ("There, like here, a middle school principal was reassigned to be a high school assistant principal.") (Comm'r brief, p. 16) While the reassignment in that case was initially broad, it was from principal of two grades to principal of three grades. ("Petitioner is expected to function as principal to seventh, eighth and ninth grade students instead of seventh and eighth grades only." *Underwood*, p. 3, CISD brief Tab 8) The principal in *Underwood* attempted to preserve the "same exact position," which Chapter 21 does not protect, clearly distinguishing it from the case at bar.

Although *Barich* is 30 years old, Jenkins' case is one of first impression challenging a principal to assistant principal reassignment via §21.206. All other principal to assistant principal cases cited by appellees post-date Jenkins' case.

Further undercutting appellees' legislative acquiescence argument is that Jenkins' argument comports with the commissioner's rationale. In 30 years, the commissioner has recognized every specific position in §21.201 - superintendent, teacher, school counselor, librarian, and nurse - as a professional capacity. Jenkins' argument merely extends this natural trajectory to include principals, the only specific position omitted from consideration. Moreover, she does not argue against the validity of the generic "administrator" professional capacity, only that it should not apply to a principal and should not be inserted into her ambiguous contract. This Court could narrowly decide that "principal" is a "professional

capacity," leaving intact for another day the mystery of the commissioner's view that the positions in §21.201 "may or may not be professional capacities" in §21.206. *Jenkins v. Crosby Indep. Sch. Dist.,* Tex. Educ. Agency Docket No. 043-R10-1211 (Comm'r Educ. 2013) (Jenkins' brief Appx. 1, p. 24).

## REPLY POINT FOUR

**Appellees misstate facts regarding Jenkins' duties as a high school assistant principal and whether Jenkins waived the *Barich* issue.**

Here, for the purposes of comparing her principal to assistant principal duties, Crosby ISD recites at length Jenkins' alleged, new duties as a high school assistant principal. (CISD brief p. 3) The commissioner joins with CISD in reciting Jenkins' specific assistant principal duties, and does so by breaking them into bullet points. (Comm'r brief pp. 2-3) But both citations directly contradict the commissioner's decision in this case, where he found, "The local record does not indicate with specificity what Petitioner's duties as assistant principal … are" *Jenkins v. Crosby Indep. Sch. Dist.,* Tex. Educ. Agency Docket No. 043-R10-1211 (Comm'r Educ. 2013) (Jenkins' brief Appx. 1, p. 2, finding of fact 4). Crosby ISD never objected to this finding and it is too late now. The commissioner's brief is directly at odds with the commissioner's decision.

The source used by both appellees is the superintendent's September 16, 2011 level-two grievance decision he issued to Ms. Jenkins. (R. pp. 284-286) Not

_____

*Jenkins v. Crosby Indep. Sch. Dist.* - Case No. 03-15-00313-CV
Appellant's Reply Brief
Page 15

coincidentally, Jenkins had never been given the legalistic set of assistant principal duties until she filed the grievance, the CISD hired lawyers, and the superintendent issued his level two decision.

The commissioner has held that a grievance decision cannot be construed as fact. "A level II decision is a decision by a finder of fact, it is not evidence of the fact findings contained therein." *Chilton v. Alvin Indep. Sch. Dist.*, Tex. Educ. Agency Docket No. 031-R10-0107 (Comm'r Educ. 2009) (Appx. 1, Conclusion of Law 9) In another case, the issue was whether the teacher had timely filed the grievance. The commissioner said, "Although [the school district's] decisions on [the teacher's] grievance reference the [grievance] policy requirements, the policy itself is absent from the local record," concluding that he could not make the determination from statements made within the district's grievance decision. *Higereda v. Valley View Indep. Sch. Dist.*, TEA Docket No. 027-R10-12-2013 (Comm'r Educ. 2014) (Appx. 2, p. 3, brackets added for clarity).

Accordingly, the superintendent's level-two decision cannot be construed as evidence. The only evidence comes from the CISD job descriptions, which the commissioner improperly ignored, and from the law. The meaningless job description for principal says, "The person chosen should be bright, experienced, and capable of working with a staff having the same capabilities." (R. 292) While this job description is lacking, state law describes a principal's job in great detail.

The equally vague, CISD assistant principal job description says, "Provide students with the appropriate learning activities and experience designed to fulfill their potential for intellectual, emotional, physical and social growth." (R. 293) While not a model of clarity, it is some evidence of Jenkins' duties as assistant principal.

Appellees now say that Jenkins waived a *factual* comparison of her job duties, thereby waiving the *Barich* issue. *Barich v. San Felipe-Del Rio Cons. Indep. Sch. Dist.*, Tex. Educ. Agency Docket No. 117-R1a-484 (Comm'r Educ. 1985) (CISD brief, pp. 28-29) In its brief, Crosby ISD says:

> At no time, nor in any grievance hearing, did Jenkins argue that the duties outlined for her current assistant principal position were untrue, inaccurate or needed further clarification. Nor did Jenkins claim that her principal duties … were different than her … duties as an assistant principal…"

(CISD brief, pp. 2-3) Although the commissioner has never before held that *Barich* only applies to a *factual* comparison of the jobs, here is what Jenkins' lawyer told the school board at her October 2011, level-three grievance meeting:

> We asked for the job descriptions in this district for principal and assistant principal because we wanted to compare them … These …[were] given to us as job descriptions for principal and assistant principal ... There's not much there in the way of a description, *but they're certainly different.*

(R. 259, hearing transcript p. 14, emphasis and brackets added for clarity) The job descriptions leave little to analyze, but they amount to some evidence. Because the CISD job descriptions were inadequate, Jenkins argued more forcefully that the

_____

*Jenkins v. Crosby Indep. Sch. Dist.* - Case No. 03-15-00313-CV
Appellant's Reply Brief
Page 17

principal's duties defined by law prove the jobs are substantially dissimilar. Proving her point, the CISD sought to define her assistant principal duties in a level-two grievance decision, and could change them at any time. However, state law restricts the school district's authority to amend a principal's duties.

Because Jenkins focused on the legal differences between the two jobs, on appeal to the Texas Education Agency, the commissioner found *sua sponte* that Jenkins waived the *Barich* issue. The commissioner said Jenkins failed to argue that her duties as principal *factually* differed from her assistant principal duties. The commissioner repeats this here:

> Her petition for review did not claim that her reassignment was inappropriate because the two jobs at issue were actually dissimilar. Nor did her briefing raise the claim that the two jobs at issue were actually dissimilar.

(Comm'r brief pp. 27-28)   In her petition for review at the Texas Education Agency (TEA), Jenkins pled: "The duties of Principal and Assistant Principal are not within the same professional capacity … The position of campus principal is … a unique position defined by state law, and is *unlike any other school employee position*." (R. 157, emphasis added). In her brief at the TEA, Jenkins argued:

> *Barich* had no evidence comparing the positions. *Here, Jenkins's evidence reflects a stark difference between principal and assistant principal.*

(R. 142, fn 4, emphasis added)  The last sentence in Jenkins' TEA brief said:  "As principal, Jenkins was the instructional leader, and she supervised an entire campus staff.  As assistant principal, she only operates in a supporting role."  (R. 152)  Finally, at the same October 2011 school board hearing, Ms. Jenkins personally told the school board:

> There are five administrators on the high school campus, four of those positions are A.P.s; and I will have no more authority than any of the other A.P.s to turn the school around.  The campus is led by the principal, and the role of an A.P. is to follow that lead.

(R. 260, hearing transcript p. 21, brackets added)

*Amicus* TASB asserts that "many principals consider an assistant principal position at the high school to be a professionally advantageous move from … elementary or intermediate/middle school ... Additionally, such principals view this … as a logical professional 'stepping stone,' …"  (TASB brief, p. 33)  There are two reasons why this is either incorrect or irrelevant:

1.  For those principals who desire a reassignment to assistant principal, it will be by agreement.  This case will have no impact on those principals.

2.  A demotion is in the eyes of the beholder, and unlike *amicus* Texas Elementary Principals and Supervisors Association, TASB does not represent the views of administrators.

Earlier in her career at CISD, *Jenkins had already served as a Crosby High School*

*assistant principal*, as she told the school board in October 2011: "I'm very familiar with the role of an A.P. In fact, it was my performance as an A.P. at C.H.S. [Crosby High School] that resulted in my promotion to principal in 2003." (R. 260, hearing transcript p. 21, brackets added) A return to CHS as assistant principal is not an agreed promotion, but rather an assignment outside of Jenkins' professional capacity.

In sum, Jenkins placed the job descriptions into evidence, specifically argued to the school board that the two jobs were different, factually and legally; and specifically argued at the TEA that her evidence - the job descriptions and the law - was more compelling than the evidence in the *Barich* case. Jenkins did not waive the *Barich* issue.

### REPLY POINT FIVE

**Crosby ISD's argument that Jenkins' claim "does not involve an expiring contract" thus rendering §21.206 inapplicable, is without merit and has been waived by CISD.**

In its first argument, CISD says that same professional capacity "is triggered when a term contract is about to expire and the board of trustees fails to give timely notice of a proposed nonrenewal." (CISD brief p. 10) Crosby ISD then states, "Here, Jenkins received timely and appropriate notice…" (CISD brief p. 10) This is a confusing and inaccurate statement. Jenkins' case exists because she did *not* receive a notice of proposed nonrenewal, thus depriving her of a quasi-due-

process opportunity to defend against the reassignment. Had she received "timely and appropriate notice," she would have no §21.206 case.

Further, CISD says that Jenkins' claim is not ripe because Jenkins' brought her claim "during the term of [her] new contract." (CISD brief p.10) That is also an inaccurate statement of law and fact. Jenkins' contract in question covers the 2011-12 and 2012-13 school years. (R. 294, Jenkins' brief Appx. 5) Jenkins signed the contract on March 2, 2011, but the contract was not effective until August 2011, at the beginning of the 2011-12 school year. (R. 294, Jenkins' brief Appx. 5) On June 28, 2011, between the time she signed the contact and the time the contract was became effective, she was given notice of reassignment. Her reassignment was not effective until August 1, 2011, as evidenced by the superintendent's letter. (R. 291)

Indeed, CISD concedes in its brief that Jenkins could have resigned penalty-free until July 8, 2011. (CISD brief, p. 2) The penalty-free resignation date is 45 days before the first day of student instruction, which in this case was August 23, 2011. (Tex. Educ. Code §21.210) Thus, Jenkins reassignment occurred between her contracts and before the 2011-12 school year started.

On this point, the commissioner is correct:

Petitioner's claim concerning Texas Education Code section 21.206 would not appear to be ripe. However, Petitioner points out that she was employed by Respondent as a principal just prior to her signing

_____

her 2011-2013 contract. *Hence, during the 2011-2012 school year, Respondent was required to employ Petitioner in the same professional capacity as Petitioner held during the 2010-2011 school year.*

*Jenkins v. Crosby Indep. Sch. Dist.*, TEA Docket No. 043-R10-1211 (Comm'r Educ. 2013, p. 5) (emphasis added).

For the first time in this litigation, Crosby ISD says the commissioner was "erroneous and should be reversed …" (CISD brief, p. 13)  But Crosby ISD failed to brief this issue before the commissioner, and failed to file exceptions to the proposal for decision issued by the commissioner's administrative law judge which contained the same language set out above.  (R. 36)  "All disagreements with the factual findings and legal conclusions of the proposal for decision must be made in the parties' exceptions to the proposal for decision or be waived."  Title 19 Tex. Admin. Code §157.1059(d).  Crosby ISD also failed to file a motion for rehearing, which is a prerequisite to a judicial appeal.   Title 19 Tex. Admin. Code §157.1061(a).

Further, CISD claims that Jenkins should have pled "demotion" instead of a violation of §21.206.  (CISD brief, p. 3, p. 11)  Whether Jenkins could have filed a federal case for a constitutional due process demotion or for discriminatory demotion, has no bearing on the analysis here.  Since 1995, the commissioner does not have jurisdiction over a "demotion" case.   The commissioner only has

jurisdiction over a violation of the school laws of the state or a violation of a written employment contract. Tex. Educ. Code §7.057(a). Crosby ISD's argument is without merit and has been waived.

## PRAYER FOR RELIEF

Jenkins respectfully requests that she be granted the following relief:

A.    That this Court reverse the trial court and the decision of the commissioner and render for Jenkins;

B.    That this Court finds that CISD breached Jenkins' contract and/or violated Jenkins' statutory rights;

C.    That this Court order CISD to immediately reinstate Jenkins to her former position as principal;

D.    That Jenkins be awarded such other and further relief to which she may show herself to be justly entitled.

Respectfully submitted,

/s/ Kevin F. Lungwitz
Kevin F. Lungwitz
State Bar No. 12698790
Elizabeth Poole
State Bar No. 24051201
The Lungwitz Law Firm, P.C.
3005 S. Lamar Blvd.
Box D-109-362
Austin, Texas 78704-4785
P. 512.461.0188
F. 866.739.7138
Kevin@LungwitzLaw.com
Elizabeth@LungwitzLaw.com

ATTORNEYS FOR APPELLANT
HERMENIA JENKINS

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. PROC. 9.4(I)(3)

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1) is 4142.

/s/ Kevin F. Lungwitz
Kevin F. Lungwitz

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served on:

David B. Hodgins
THOMPSON & HORTON, L.L.P.
3200 Southwest freeway, Suite 2000
Houston TX 77027
Telephone: (713) 554-6745
Telecopy: (713) 583-8245
dhodgins@thompsonhorton.com
FOR APPELLEE CROSBY ISD

Andrew Lutostanski
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin TX 78711-2548
Phone: (512) 475-4200
Fax: (512) 320-0167
andrew.lutostanski@texasattorneygeneral.gov
FOR APPELLEE COMMISSIONER OF EDUCATION

Via e-file and courtesy email on October 13, 2015.

/s/ Kevin F. Lungwitz
Kevin F. Lungwitz

**TABLE OF APPENDICES**

1. *Chilton v. Alvin Indep. Sch. Dist.*, Tex. Educ. Agency Docket No. 031-R10-0107 (Comm'r Educ. 2009)

2. *Higereda v. Valley View Indep. Sch. Dist.*, Tex. Educ. Agency Docket No. 027-R10-12-2013 (Comm'r Educ. 2014)

3. *Montgomery v. Richardson Indep. Sch. Dist.*, Tex. Educ. Agency Docket No. 007-R10-1008 (Comm'r Educ. 2012)

4. Title 19 Tex. Admin. Code §§150.1021; 150.1022;
   Title 19 Tex. Admin. Code §229.3

# APPENDIX 1

*Chilton v. Alvin Indep. Sch. Dist.*,
Tex. Educ. Agency Docket No. 031-R10-0107
(Comm'r Educ. 2009)

## *2009 TX Educ. Agency LEXIS 13*

Copyright (c) 2009 Texas Education Agency

March 05, 2009

DOCKET NO. 031-R10-0107

**Reporter**
2009 TX Educ. Agency LEXIS 13

## LAURA CHILTON ; v. ; ALVIN INDEPENDENT SCHOOL DISTRICT

## Core Terms

resign, mail, rescind, envelope, school district, fact finding, rescission, offeror, letter of resignation, decision maker, mailbox

**Panel:** [*1] ROBERT SCOTT, COMMISSIONER OF EDUCATION

## Opinion

### DECISION OF THE COMMISSIONER

Statement of the Case

Petitioner, Laura Chilton, complains of the actions of Respondent, Alvin Independent School District. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to hear this cause. Petitioner is represented by Julie D. Leahy, Attorney at Law, Austin, Texas. Respondent is represented by Clay Grover, Attorney at Law, Houston, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be granted. Exceptions and replies were timely filed and considered.

Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are established applying the substantial evidence standard.

1. In response to Petitioner's grievance, Respondent's board of trustees voted to deny the grievance and to uphold the Level II decision.

2. The Level II decision reads in pertinent part as follows:

> **REPORT OF LEVEL TWO CONFERENCE BY SUPERINTENDENT OR DESIGNEE**
>
> 1. Complainant's Name: Laura Chilton
>
> Represented by: Eric J. Davis of Davis and Associates
>
>  [*2] 2. Position: Teacher Campus/Department: REACH

3. Date and time of conference: November 2, 2006 at 2:00 p.m.

4. The facts as presented by the complainant are as follows:

Pressured and mislead into resigning by the Principal-stated the Principal told her that if she did not resign, she would go to HR and have her terminated.

Stated that she did not receive the letter of acceptance of her resignation until after she received the letter of denial of her request to rescind her resignation.

Submitted: 2 -- AISD Envelopes Postmarked September 1, 2006 and the other September 6, 2006.

Submitted: Commissioner's Ruling Docket 115-R8-197 Daniel Suty v Aldine ISD 1997

5. In my opinion, the allegations made in the original complaint are not adequately supported by the facts submitted.

Explanation:

. Resignation states the reason for resigning due to travel time it gets to work.

. The principal stated that she did not tell Ms. Chilton that she would terminate her as this was not within her authority.

. There is no distinguishing information on the envelopes to determine the contents of either envelope. In discussing HR time frames for mailing letter of acceptance of resignation and the [*3] letter of denial of the rescission of resignation requests are as follows:

| | |
|---|---|
| Chilton Resignation Letter | August 24, 2006 |
| AISD Letter of Resignation Acceptance Letter | August 29, 2006 |
| Chilton Request Rescission of Resignation Letter | August 30, 2006 |
| | (Fax 3:04 PM) |
| Denial of Rescission Request | August 31, 2006 |

The AISD letter of resignation acceptance was mailed on the day that it was signed which was August 29, 2006 therefore, the envelope that Ms. Chilton received had an August 29, 2006 meter on it. Once the resignation was mailed August 29, 2006 it was binding under the law, therefore due notification was given prior to the attempt of rescission by Ms. Chilton on August 30, 2006.

Envelope Dated September 6, 2006- It has been determined that the envelope contained three documents that are sent out to all employees leaving the district. Documents include: HR Cover Letter/Directions. Exit Report Form, Personnel Release Form.

Envelope Dated September 1, 2006-It has been determined that the envelope contained the denial of the rescission request.

6. In my opinion, the remedy sought by the complainant is not justified by the facts submitted.

Explanation:

The written resignation [*4] was received on August 24, 2006 and formally accepted on August 29, 2006. Ms. Chilton's request for rescission was received on August 30, 2006 and formally denied on August 31, 2006. As a result, a vacancy was posted and the principal is active in the hiring process. All payout have been completed.

7. The decision made or recommendations agreed upon as a result of the conference are as follows: None

signed Robert S. Quinn                    11-15-06

Signature of Superintendent Designee          Date

3. On August 24, 2006, Petitioner hand delivered a letter of resignation to her principal. The letter reads:

> August 24, 2006
>
> Dear Mrs. Fyfe,
>
> I am resigning on August 24, 2006 from Alvin ISD. Due to the travel time it takes me to get to work.
>
> Thank you,
>
> Laura Chilton

4. On September 1, 2006, a letter dated August 31, 2006 from Robert G. Quinn was mailed to Petitioner. The letter reads in relevant part:

> I am sending you this letter in response to the fax that we received from you on August 30, 2006 at 3:04 PM. After review, it has been determined that the district is unable to honor your request based on the following facts:
>
> . Your written resignation was received and accepted on August [*5] 24, 2006.
>
> . The vacancy created by your resignation is currently posted.
>
> . The principal is active in the hiring process for filling the vacancy.
>
> . Payroll has finalized your payout and you are not an active employee.

5. On September 6, 2006, a letter dated August 29, 2006 from Robert G. Quinn was mailed to Petitioner. The letter reads in relevant part:

> This letter is to inform you of receipt of your letter of resignation dated August 24, 2006. I do hereby accept your resignation for the position of special education teacher, REACH School, effective August 24, 2006.
>
> Should you have any questions, please do not hesitate to contact me. Thank you for your service with Alvin Independent School District and best wishes in your future endeavors.

6. Petitioner had a probationary contract to teach for Respondent for the 2006-2007 school year.

Discussion

Petitioner contends that Respondent improperly ended her probationary contract. Petitioner contends that she rescinded her offer of resignation before it was accepted.

Standards

The standards concerning the acceptance of the resignation of a teaching contract after the period for unilateral resignation are set forth [*6] in *Cantu v. Central Educ. Agency, 884 S.W.2d 565* (Tex. App.-Austin 1994, no writ). Tex. Educ. Code § 21.205(a). An agreement to rescind a teaching contract requires offer, acceptance and consideration. *Id. at 566.* The dispute between the parties is whether

Petitioner rescinded her resignation before Respondent accepted her resignation. The *Cantu* court has held:

> The aphorism "the offeror is the master of his offer" reflects the power of the offeror to impose conditions on acceptance of an offer, specify the manner of acceptance, or withdraw the offer before the offeree has effectively exercised the power of acceptance. However, more often than not, an offeror does not expressly authorize a particular mode, medium, or manner of acceptance. Consequently, particularly with parties communicating at a distance, a rule of law is needed to establish the point of contract formation and allocate the risk of loss and *567 inconvenience that inevitably falls to one of the parties between the time that the offeree exercises, and the offeror receives, the acceptance. *See* 1 Arthur L. Corbin, *Contracts* § 78 (1963).
>
> [*7] [5] As Professor Corbin notes, courts could adopt a rule that no acceptance is effective until received, absent express authorization by the offeror; however, the mailbox rule, which makes acceptance effective on dispatch, closes the deal and enables performance more promptly, and places the risk of inconvenience on the party who originally has power to control the manner of acceptance. *Id.* Moreover, "the mailing of a letter has long been a customary and expected way of accepting [an] offer." *Id.* Therefore, "[e]ven though the offer was not made by mail and there was no [express] authorization, the existing circumstances may be such as to make it reasonable for the offeree to accept by mail and to give the offeror reason to know that the acceptance will be so made." *Id.* In short, acceptance by mail is impliedly authorized if reasonable under the circumstances
>
> [6] The Restatement approves and adopts this approach: an acceptance by any medium reasonable under the circumstances is effective on dispatch, absent a contrary indication in the offer. Restatement (Second) of Contracts §§ 30(2), 63(a), 65, 66 (1979). In addition, the Restatement specifically recognizes that [*8] acceptance by mail is ordinarily reasonable if the parties are negotiating at a distance or *even if a written offer is delivered in person to an offeree in the same city. Id.* § 65 cmt. c (emphasis added). The same standard, *viz.,* whether the manner of acceptance is reasonable under the circumstances, governs offer and acceptance in commercial transactions under the Texas Business and Commerce Code. *See* Tex.Bus. & Com.Code Ann. § 2.206 (West 1968).

*Id. at 566-567.* In general, an offer may be accepted by mail. The acceptance letter must be properly addressed. The time of acceptance is when a properly addressed acceptance is placed in the mail. *Id. at 566 n.1.* If the offer to resign is accepted before the offer is rescinded, the resignation is complete.

## Mail Box Rule

Petitioner contends that the mailbox rule does not apply in this case. However, as the above quoted portion of *Cantu* makes clear, acceptance by mail is ordinarily reasonable. Petitioner points to nothing in the record to show why this usual standard should not apply in this case. Petitioner's letter of resignation does not specify a method [*9] of acceptance. If Respondent placed its acceptance of Petitioner's resignation in the mail, prior to it receiving Petitioner's fax rescinding the resignation, the resignation is effective.

## Mailing

The central dispute in the present case is "When did Respondent mail its acceptance of Petitioner's resignation?" Petitioner attempted to rescind her offer of resignation by a fax on August 30, 2006 at 3:04 p.m. If Respondent placed its letter in the mailbox prior to that time, Petitioner's offer was accepted and the resignation is final.

As this is a case against a school district, it is to be decided based on the local record applying the substantial evidence rule. Tex. Educ. Code § 7.057(c). The substantial evidence standard is generally the standard specified in Texas Government Code section 2001.174. 19 Tex. Admin. Code § 157.1073(h). In the present case, Respondent specifically upheld the Level II decision. The Level II decision contains findings of fact. Hence, the Commissioner must determine whether the findings of fact are supported by substantial evidence in the record.

Acceptance Letter

Respondent contends that the letter accepting Petitioner's resignation is itself [*10] evidence that the letter was mailed on August 29, 2006 because the letter is dated August 29, 2006. The date on the letter is evidence that the letter was drafted that day. It is not evidence that the letter was properly mailed on that day.

Level II Decision

Respondent also contends that the Level II decision itself is evidence that acceptance was mailed on August 29, 2006. However, the Level II decision was what was appealed to the board. It can no more be considered evidence than an order of a district judge can be as considered evidence by an appellate court to prove that the district court's order was supported by evidence.

At oral argument, Respondent's counsel noted that the Level II decision maker was the individual who drafted the acceptance letter and argued that the Level II decision maker had actual knowledge that the letter was mailed on time and of the contents of the two envelopes that bear postage meter dates of September 1 and 6, 2006 [1]

. A decision maker must base his decision [*11] on the evidence, not on personal knowledge. It has been held:

> Nothing is more thoroughly established than the proposition that neither a judge nor a juror may act as a witness. *Glasser v. United States, 315 U.S. 60, 82, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942)* (judge); *Gregory v. St. Louis Southwestern Railway Co., 377 S.W.2d 847, 853* (Tex.Civ.App.-Texarkana 1964), *rev'd on other grounds, 387 S.W.2d 27 (Tex.1965)* (juror).

*Sizemore v. Texas State Board of Dental Examiners, 747 S.W.2d 389, 396* (Tex. App.-Dallas 1987) reversed on other grounds *759 S.W.2d 114 (Tex. 1988).* Perhaps the Level II decision maker knew when the acceptance letter was mailed. If so, he could not rely on his personal knowledge.

Further, even if the Level II decision was evidence that the letter was mailed on August 29, 2006, it is not evidence that the letter was properly addressed. The Level II decision fails to address this issue.

---

[1] In *Rogers v. Texas Optometry Bd., 609 S.W.2d 248* (Tex. Civ. App.-Austin 1980, writ ref'd n.r.e.), administrative action was overturned because two board members, who recused themselves testified against a license holder. While the two board members did not sit as fact finders, their influence over the other board members was found to be potentially so great that the court found a lack of fairness. Perhaps an even greater lack of fairness would have been found if they did not recuse themselves.

The mailbox rule only applies if a letter is properly addressed. There is not substantial evidence [*12] to support a determination that the offer was accepted before it was withdrawn.

The only evidence in the record as to when the acceptance was mailed was provided by Petitioner who testified that the acceptance letter came in an envelope that was placed in evidence. This envelope bears a postage meter marking which reads September 6, 2006. The evidence in the record conclusively establishes that the acceptance letter was mailed on September 6, 2006. *cf. Montgomery Indep. Sch. Dist v. Davis, 34 S.W.3d 559, 567 (Tex. 2000)*(finding in a chapter 21 case that a board could rely on undisputed evidence). Since Petitioner withdrew her offer of resignation before the resignation was accepted, Petitioner's contract for the 2006-2007 school year remained in force. Petitioner is entitled to compensation under her 2006-2007 contract.

Conclusion

Petitioner's appeal should be granted. The mailbox rule applies to this case. Petitioner rescinded her resignation before it was accepted.

Reply to the Exceptions to the Proposal for Decision

Respondent correctly notes that the grievance process lacks the formality of a court and that school districts have wide latitude [*13] to determine their procedures. However, the Commissioner has made clear that the hearing given must be a fair hearing:

> While a district has wide latitude to design its own hearing procedures, a grievant needs to be given a fair opportunity to present his case. *Taylor v. Marshall Independent* School District, Docket No. 130-R10-297 (Comm'r Educ. 1997).

*Adams v. Flour Bluff Independent* School District, Docket No. 115-R10-598 (Comm'r Educ. 1999). A hearing is not fair when instead of relying on the facts presented, a decision maker bases a decision on personal knowledge. The Level II hearing was not a fair hearing. But even if the Level II hearing were a fair hearing, the Level II hearing decision is not evidence to be considered in determining whether substantial evidence supports the board's decision.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner of Education has jurisdiction over Petitioner's claims under Texas Education Code section 7.057.

2. An appeal of a decision of a school district [*14] under Texas Education Code section 7.057 is to be based on a review of the local record under a substantial evidence standard of review. Tex. Educ. Code § 7.057(c).

3. In a case where a school district makes findings of fact, the substantial evidence standard of review referenced in Texas Education Code section 7.057(c) is generally the standard identified in Texas Government Code section 2001.174. 19 Tex. Admin. Code § 157.1073(h).

4. An agreement to rescind a teaching contract, after the period for unilateral resignation, requires offer, acceptance, and consideration. Tex. Educ. Code § 21.205(a).

5. An offer can be rescinded before it is accepted.

6. An offer can generally be accepted by mail unless the offer specifies another mode of acceptance. As long as no limitations have been placed on acceptance and acceptance by mail is reasonable under the circumstances, an offer may be accepted by mail. If an offer is accepted by mail, acceptance occurs upon dispatch of a properly addressed letter.

7. Since Petitioner placed no restrictions as to how her offer could be accepted and under the circumstances of the present case it was reasonable for the offer of resignation to be accepted [*15] by mail, Respondent could have accepted Petitioner's offer by mail.

8. Respondent could not have accepted Petitioner's offer after August 30, 2006 at 3:04 p.m. because Petitioner rescinded her offer at that time.

9. A Level II decision is a decision made by a finder of fact, it is not evidence of the fact findings contained therein.

10. There is not substantial evidence that Respondent mailed its acceptance letter on August 29, 2006.

11. There is not substantial evidence that a properly addressed letter was mailed by Respondent to Petitioner on August 29, 2006.

12. The evidence in the local record conclusively establishes that Respondent mailed its letter of acceptance on September 6, 2006.

13. Because Petitioner rescinded her offer of resignation prior to Respondent's acceptance of her offer of resignation, no resignation occurred. Petitioner's 2006-2007 contract was not ended by resignation.

14. Petitioner's appeal should be granted.

ORDER

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, GRANTED. [*16]

SIGNED AND ISSUED this 5th day of March, 2009.

# APPENDIX 2

*Higereda v. Valley View Indep. Sch. Dist.,*
Tex. Educ. Agency Docket No. 027-R10-12-2013
(Comm'r Educ. 2014)

## [2014 TX Educ. Agency LEXIS 46](#)

Copyright (c) 2014 Texas Education Agency

October 7, 2014; October 7, 2014

DOCKET NO. 027-R10-12-2013

**Reporter**
2014 TX Educ. Agency LEXIS 46

# ISMAEL HIGAREDA ; v. ; VALLEY VIEW INDEPENDENT SCHOOL DISTRICT

## Core Terms

grievance, school *year*, *probationary*, *term contract*, classroom teacher, school district, teacher, written *contract*, fact finding, no evidence, terminate, notice, at-will, written employment *contract*, school law, contractual, incorrect, exhaust

**Panel:** [**\*1**] MICHAEL WILLIAMS, COMMISSIONER OF EDUCATION

## Opinion

### DECISION OF THE COMMISSIONER

Statement of the Case

Petitioner, Ismael Higareda, complains of actions and decisions of Respondent, Valley View Independent School District. Laura Moriaty is the Administrative Law Judge appointed by the Commissioner of Education to preside over this cause. Petitioner is represented by Dohn Larson, Attorney at Law, Austin, Texas. Respondent is represented by Renee Betancourt, Attorney at Law, Edinburg, Texas.

The central issue in this case is that a classroom teacher cannot be an at-will employee, even in the absence of a written employment *contract*. When a school district board of trustees fails to approve a *probationary*, term or continuing *contract* for a classroom teacher, the board is in violation of chapter 21 of the Texas Education Code, which requires that all teachers must be employed under a written *contract*. The Commissioner has jurisdiction over the case not as an employment *contract* matter under Texas Education Code section 7.057(a)(2)(B), but as a violation of the school laws of Texas under Texas Education Code section 7.057(a)(2)(A).

Findings of Fact

After due consideration of the [**\*2**] record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision:

1. Respondent employed Petitioner as a classroom teacher under *probationary* *contracts* for the 2010-2011 and 2011-2012 school *years*. Petitioner resigned at the end of the 2011-2012 school *year*, and then started working for Respondent as a classroom teacher again at the start of the 2012-2013 school *year*.

2. Petitioner and Respondent both agree that under Texas Education Code chapter 21 and Respondent's policies, Petitioner was only eligible for a *term contract* at the start of the 2012-2013 school *year*. Both parties agree that Petitioner was not eligible for a *probationary* *contract* under Texas Education Code section 21.102.

3. Under its local policy DC (LOCAL), Respondent's Board of Trustees ("Board") "retains final authority for the employment of contractual and noncontractual personnel."

4. The Board did not delegate authority to **_contract_** with employees on its behalf.

5. On January 11, 2013, Respondent's employee or a member of Respondent's Board presented Petitioner with a **_probationary_** **[*3]** **_contract_** for the 2012-2013 school **_year_** (″**_Contract_**″), and Petitioner signed the **_Contract_**.

6. The Board neither approved nor signed the **_Contract_**. Respondent and Petitioner agree that as a result, there was no written **_contract_** between Respondent and Petitioner for the 2012-2013 school **_year_**.

7. Petitioner worked for Respondent as a classroom teacher throughout the 2012-2013 school **_year_**.

8. On April 22, 2013, the Board voted to terminate Petitioner at the end of the 2012-2013 school **_year_** as ″an employee currently employed under an Education Code Chapter 21 **_probationary_** **_contract_**.″

9. Petitioner filed a formal grievance with Respondent on May 14, 2013, asserting, ″I do not have a fully executed **_contract_** for the 2012-2013 school **_year_**--the **_contract_** on which the district relies is not signed by the board...My employment status with the district should be construed as if I held a **_term contract_**.″

10. There is no evidence in the record that Petitioner knew or should have known prior to filing his grievance that the Board had not voted to approve the **_Contract_**.

11. There is no evidence of Respondent's local grievance policy in the local record.

Discussion

Texas public school teachers must be **[*4]** employed under **_one_** of three different **_contracts_**: (1) a **_probationary_** **_contract_**; (2) a continuing **_contract_**; or (3) a **_term contract_** (collectively, ″Chapter 21 **_contract_**″). Tex. Educ. Code § 21.002. A classroom teacher cannot be employed as an at-will employee. *Nield v. Beaumont Indep. Sch. Dist.*, Docket No. 024-R10-1110 (Comm'r Educ. 2012) (holding that a classroom teacher is entitled to a a **_probationary_**, continuing or **_term contract_** under chapter 21 of the Texas Education Code even if the teacher is working under an unwritten **_contract_** that appears to be at-will). Under a **_probationary_** **_contract_**, the board of trustees may terminate the teacher's employment at the end of the **_contract_** period without advance notice or an opportunity for a hearing if the district believes its best interests will be served by terminating the employment. Tex. Educ. Code § 21.103. Under a **_term contract_**, a teacher is entitled to notice and a hearing if a school district intends not to renew the teacher's **_contract_**. Tex. Educ. Code §§ 21.206-21.209. The Texas Education Code severely restricts which teachers receive a **_probationary_** **_contract_**: no teacher can be in a **_probationary_** **_contract_** for more than the first four **[*5]** **_years_** of employment with a school district, and any teacher that has taught for at least **_five_** of the last **_eight_** **_years_** cannot have a **_probationary_** **_contract_** for more than **_one_** **_year_**. Tex. Educ. Code § 21.102.

Petitioner and Respondent agree that under chapter 21 of the Texas Education Code (″Chapter 21″), Petitioner was not legally eligible to receive a **_probationary_** **_contract_** for the 2012-2013 school **_year_**. Respondent argues that Petitioner's claim arose when he signed a document labelled ″**_Probationary_** **_Contract_**″ because he should have known at that point that Respondent was in violation of Chapter 21 and that he was subject to firing as a **_probationary_** **_contract_** employee, without advanced notice or a hearing. Respondent asserts that Petitioner should have filed a grievance within 15 days of signing the **_Contract_**, and since he failed to do so, the Commissioner has no jurisdiction over Petitioner's claim. Petitioner counters that because Respondent never adopted the **_Contract_**, there was no **_probationary_** **_contract_** for him to grieve. Petitioner argues that without a written **_contract_**, he became by default a **_term contract_** employee because a **_term contract_** was the only possible **_contract_** he could have **[*6]** as a matter of law under Chapter 21. Petitioner further argues that his claim did not arise until Respondent improperly terminated his **_term contract_**, so his grievance was timely and the Commissioner has jurisdiction over his appeal.

Timeliness of Grievance

Respondent asserts that the Commissioner does not have jurisdiction over the case because Petitioner did not timely file a grievance after he signed the **_Contract_**, but there is no evidence in the local record of what Respondent's grievance policy

required. Although Respondent's decisions on Petitioner's grievance reference the policy requirements, the policy itself is absent from the local record. Decisions made by a finder of fact cannot serve as evidence of the facts described therein. *See, e.g., Chilton v. Alvin Indep. Sch. Dist.*, Docket No. 031-R10-0107 (Comm'r Educ. 2009). The Commissioner must make his decision based only on "a review of the record developed at the district level under a substantial evidence standard of review." Tex. Educ. Code § 7.057(c). The local record in this case does not contain substantial evidence to support Respondent's holding that Petitioner failed exhaust administrative remedies by filing **[*7]** a grievance after Respondent's local grievance deadline. The Commissioner therefore has jurisdiction over this case.

Even if the local grievance policy was a part of the administrative record, Respondent's focus on the ***Contract*** as the triggering event for Petitioner's grievance is misplaced. Both parties agree that there is no written ***contract*** in this case because the Board failed to approve the ***Contract***. The fact that Petitioner once signed a document that purported to be a ***probationary*** ***contract*** when he was legally entitled to a ***term contract*** is irrelevant when no ***probationary*** ***contract*** agreement ever actually existed between the parties. Respondent did not violate the Texas Education Code by showing Petitioner a document purporting to be a ***probationary*** ***contract*** and allowing him to sign it. Instead, Respondent violated Chapter 21 by failing to approve any ***contract*** at all for Petitioner. There is no evidence in the record that shows Petitioner knew or should have known before he filed his grievance that the Board had failed to approve his ***contract***. Petitioner therefore properly exhausted his administrative remedies at the local level.

Jurisdiction Without Written ***Contract***

Respondent **[*8]** relies heavily on *Garza v. Jim Hogg County Indep. Sch. Dist.*, Docket No. 001-R2-901 (Comm'r Educ. 2002), to support its position that the Commissioner does not have jurisdiction over this case because there was no written ***contract***. *Garza* involved a school superintendent who did not receive a written employment ***contract*** from the school district, worked as a superintendent for most of the school ***year***, and then was terminated without notice or hearing. *Id*. The Commissioner in *Garza* held that he did not have jurisdiction over the case under Texas Education Code section 7.057(a)(2)(B), which gives the Commissioner jurisdiction over violations of written employment ***contracts*** between school districts and school distict employees, because there was no written employment ***contract***. *Id*. That same principle applies in this case--the Commissioner does not have jurisdiction under Texas Education Code section 7.057(a)(2)(B) because there was no written employment ***contract*** between Petitioner and Respondent. The Commissioner does not have the ability to interpret or enforce unwritten employment ***contracts***, so the Commissioner cannot determine whether Petitioner was improperly terminated **[*9]** in this case. *See, e.g., Cooper v. Paris Indep. Sch. Dist.* Docket No. 83-R2-197 (Comm'r Educ. 1997) (holding that when there was no written ***contract***, the Commissioner could not enforce ***contract*** termination requirements against a school district); *see also, Hudson Indep. Sch. Dist. v. Lassiter*, Docket No. 251-TTC-897 (Comm'r Educ. 1998) ("Since there was no written ***contract*** between Petitioner and Respondent, the Commissioner cannot take action against Respondent...for abandonment of contact."). The Commissioner does not have jurisdiction under Texas Education Code section 7.057(a)(2)(B) to determine or enforce termination rights for the unwritten ***contract*** Petitioner claims in this case.

However, Texas Education Code section 7.057(a)(2)(A) provides entirely separate grounds for the Commissioner's jurisdiction: the actions or decision of a school board that violate the school laws of this state. In *Garza*, the Commissioner considered jurisdiction under section 7.057(a)(2)(A), but looked only to whether the school district had violated Texas Education Code chapter 21, subchapter E by failing to follow the notice and hearing requirements for a ***term-contract*** employee. The Commissioner **[*10]** found that the school district had not violated the ***term contract*** termination requirements because there was no evidence that the superintendent in *Garza* had a ***term contract***. Notably, the Commissioner did not consider or address in *Garza* whether the school district violated Texas Education Code section 21.002--which requires that a school district employ each classroom teacher under a ***probationary***, continuing, or ***term contract***--because that provision does not apply to superintendents. As this case does involve a classroom teacher, Texas Education Code section 21.002 applies here, rendering *Garza* inapposite. More on point is *Gonzalez v. Donna Indep. Sch. Dist.*, Docket No. 074-R10-605 (Comm'r Educ. 2007), a case involving a classroom teacher where the Commissioner held:

> While there may be no written ***contract***, Petitioner has reported to work and Respondent has paid him. There is a ***contract*** between Petitioner and Respondent. While the Commissioner lacks jurisdiction over this case based on Texas Education Code section 7.057 (a)(2)(B) because there is no written ***contract***, the Commissioner does have

jurisdiction over this case based on Texas Education Code section 7.057 [*11] (a)(2)(A) because Petitioner alleges violations of the school laws of this state.

In this case, the Commissioner has jurisdiction section 7.057(a)(2)(A) to determine whether Respondent violated Texas Education Code section 21.002 by failing to employ Petitioner under a Chapter 21 *contract*.

Chapter 21 *Contract*

Respondent's failure to employ Petitioner under any of types of *contracts* listed in Texas Education Code section 21.002 is a violation of the school laws of Texas. In its decision on Petitioner's grievance, the Board held that Petitioner was an at-will employee because there was no executed written employment *contract*. The Board was wrong: the Commissioner has previously held that a teacher employed by a school district to teach without a written *contract* cannot be an at-will employee and must be given a Chapter 21 *contract*. *Nield v. Beaumont Indep. Sch. Dist*., Docket No. 024-R10-1110 (Comm'r Educ. 2012). In failing to approve any Chapter 21 *contract* for Petitioner, the Board violated Texas Education Code section 21.002. As a result, the Board must approve a Chapter 21 *contract* for Petitioner.

Conclusion

Respondent violated the school laws of Texas not when its [*12] superintendent gave Petitioner an unauthorized document labeled "*Probationary Contract*" and allowed him to sign it, but rather when the Board failed to approve any valid Chapter 21 *contract* to employ Petitioner as a teacher. Respondent's local grievance policies were not included in the local record, so there is not substantial evidence to support Respondent's argument that Petitioner failed to exhaust administrative remedies by filing his grievance too late. Moreover, there is no evidence in the record to show that Petitioner discovered before he filed his grievance that the Board had not approved his *contract*, so there is no evidence to dispute his assertion that his grievance was timely. Respondent employed Petitioner as a classroom teacher, so Respondent was legally obligated to give Petitioner a Chapter 21 *contract*--classroom teachers cannot be at-will employees. Respondent must give Petitioner a Chapter 21 *contract* for the 2012-2013 school *year*.

Exceptions

Both Petitioner and Respondent filed Exceptions to the Proposal for Decision. Petitioner excepted to a finding of fact that stated it was Respondent's Superintendent that gave Petitioner the *Contract*, because the record [*13] shows it was a member of Respondent's Board, and requested that the Commissioner add additional Conclusions of Law regarding Petitioner's contractual relationship with Respondent during the 2013-2014 school *year*. Respondent argued that the Proposal for Decision inappropriately held that there was an oral *contract* in this case, set incorrect terms for that *contract*, and disregarded Respondent's interpretation of its own grievance policy with regard to when Petitioner should have filed a formal grievance.

Petitioner is correct that Findings of Fact 4 and 5 incorrectly named the Superintendent as the person who gave Peitioner the *Contract*. In fact, there is no evidence in the local record showing precisely which person associated with Respondent gave Petitioner the *Contract*. Petitioner cites the Board's findings of fact in this case, but the findings of fact from Respondent's Board cannot serve as evidence of the facts they describe. *See, e.g., Chilton v. Alvin Indep. Sch. Dist*., Docket No. 031-R10-0107 (Comm'r Educ. 2009). The Findings of Fact have been amended accordingly.

Petitioner is incorrect in asserting that the Commissioner should make Conclusions of Law regarding the contractual [*14] relationship between Petitioner and Respondent during the 2013-2014 school *year*. There is no evidence in the local record to support findings beyond the 2012-2013 school *year*. Petitioner is welcome to pursue the grievance process with Respondent to develop a local record regarding the contractual relationship between Petitioner and Respondent during the 2013-2014 school *year* in light of this decision, but that record is not currently before the Commissioner in this appeal. No other changes will be made in response to Petitioner's Exceptions.

With regard to Respondent's concerns about the oral *contract*, the question of whether an oral *contract* existed between the parties is irrelevant to the fact that Respondent violated the Texas Education Code by failing to employ Petitioner under

a written Chapter 21 *contract*. The Conclusion of Law on the existence of an oral *contract* has therefore been removed from the Decision of the Commissioner. However, Respondent is incorrect that the Conclusions of Law, which state Petitioner is entitled to a *term contract* for the 2012-2013 school *year* and to be paid as a *term contract* employee was paid in accordance with Respondent's policies during that [*15] period, are somehow setting the terms for a *contract* that never existed. Rather, these Conclusions of Law merely require Respondent to fulfill its legal obligation under the Texas Education Code to provide its teachers with Chapter 21 *contracts* and the benefits attendant thereto. The Commissioner has not specified precisely what Petitioner should have been paid--only that it should be what a Chapter 21 *contract* employee in his position was due under Respondent's policies for the 2012-2013 school *year*. In doing so, the Commissioner is not interpreting an existing *contract*, but simply stating the impact of Respondent fulfilling the requirements of the Texas Education Code. To avoid any confusion or misinterpretation, although Petitioner and Respondent agree that Petitioner could only be employed under a *term contract* according to their mutual interpretation of Respondent's policies and Chapter 21, the Conclusions of Law have been amended to refer only to a Chapter 21 *contract*. No other changes to the Proposal for Decision are necessary in response to Respondent's Exceptions regarding the existence of Petitoner's *contract*.

Respondent also excepts to Finding of Fact 10, on the grounds [*16] that it incorrectly fails to defer to Respondent's interpretation of its own local grievance policy. As an initial matter, Respondent's local grievance policy was not included in the local record for this case, and is therefore not properly before the Commissioner. Therefore, all references to specific requirements under Respondent's local grievance policy that appeared in the Proposal for Decision have been removed. The discussion of the grievance policy has been amended to hold that there is no substantial evidence in the record of what Respondent's local grievance policy was. Without this evidence in the local record, Respondent cannot show that Petitioner failed to exhaust his administrative remedies by missing the grievance deadline.

But regardless of what specific deadlines Respondent's local grievance policy gave for filing a formal grievance, the parties agree that the operative question to determine if Petitioner has exhausted administrative remedies is whether Petitioner knew or should have known about the cause of his grievance significantly before he filed the grievance. While Finding of Fact 10 may have been unclearly worded, the Commissioner's finding is that Petitioner [*17] did not have reason to know before he filed his grievance with Petitioner that the Board had failed to approve his *contract*, nullifying the *contract*. The wording of Finding of Fact 10 has been revised in an effort to make it clearer. Aside from those described above, no other changes will be made to the Proposal for Decision in response to Respondent's Exceptions.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Administrative Law Judge, I make the following Conclusions of Law:

1. The Commissioner of Education has jurisdiction over this cause under Texas Education Code section 7.057(a)(2)(A).

2. Petitioner does not have a written *contract* with Respondent.

3. Petitioner filed his grievance timely.

4. Texas school districts cannot employ classroom teachers as at-will employees.

5. The contractual requirements of Chapter 21 of the Texas Education Code are mandatory.

6. Petitioner is entitled to a written Chapter 21 *contract* for the 2012-2013 school *year*.

7. Petitioner is entitled to the amount of pay that he should have received for the written Chapter 21 *contract* had it existed during the [*18] 2012-2013 school *year* under Texas Education Code section 21.402 and Respondent's policies, less the amount of pay that he has already received.

8. Petitioner is entitled to accrue the Teachers Retirement System contributions that Respondent should have made for the written Chapter 21 *contract* had it existed during the 2012-2013 school *year*, less any contributions Respondent already made for Petitioner.

9. Petitioner's appeal should be granted as specified. Any relief not explicitly granted should be denied.

ORDER

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as the Commissioner of Education, it is hereby

ORDERED that the Petitioner's appeal be, and is hereby, GRANTED, and

FURTHER ORDERED that Respondent shall reinstate Petitioner as if he had a written Chapter 21 *contract* for the 2012-2013 school *year*, and pay all resulting back pay and benefits owed under such a *contract* in accordance with Respondent's polices that has not already been paid to Petitioner.

SIGNED AND ISSUED this 7th day of October, 2014.

# APPENDIX 3

*Montgomery v. Richardson Indep. Sch. Dist.*,
Tex. Educ. Agency Docket No. 007-R10-1008
(Comm'r Educ. 2012)

| | | |
|---|---|---|
| DR. CINDY MONTGOMERY | § | BEFORE THE |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| RICHARDSON INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Dr. Cindy Montgomery, appeals the action of Respondent, Richardson Independent School District, concerning her grievance. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education. Petitioner is represented by Mark W. Robinett, Attorney at Law, Austin, Texas. Respondent is represented by Sandra Carpenter, Attorney at Law, Austin, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be dismissed in part and denied in part.

### Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[1].

1.     Petitioner was employed by Respondent under a term contract for the 2007-2008 school year. Most of the terms of this contract are not in the local record. Petitioner was employed by Respondent as an elementary school principal for the 2007-2008 school year.

2.     Petitioner was employed by Respondent under a term contract for the 2008-2009 school. The terms of this contract are in the local record. The contract is

---

[1] *See* 19 TEX. ADMIN. CODE § 157.1073(h); *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

"**For Professional Administrator**." Petitioner was employed as a Program Specialist II for the 2008-2009 school year.

3. Petitioner was assigned to work the same number of days and was scheduled to receive the same compensation for the 2008-2009 school year as Petitioner received for the 2007-2008 school year.

4. As a Program Specialist II, Petitioner reports to the Director of Professional Development. Petitioner's general responsibilities concern all new teachers and district-wide professional development. Petitioner's specific duties and responsibilities as a Program Specialist II are unclear from the record.

Discussion

Petitioner contends that Respondent changed her professional capacity when it reassigned her from the position of Elementary Magnet School Principal to the position of Program Specialist II. In particular, Petitioner maintains that the position of a campus principal is a distinct professional capacity. Petitioner also contends that she was demoted. Respondent denies Petitioner's claims.

Demotion

The Texas Education Code does not prohibit a school district from demoting a teacher. Petitioner has not alleged that any section or sections of the Texas Education Code prohibit demotions. To the extent the Commissioner has jurisdiction over demotions, that authority must come from Texas Education Code section 7.057(a)(2)(B) which gives the Commissioner jurisdiction over violations of written employment contracts that cause or would cause monetary harm. Because Petitioner has not lost salary or benefits Petitioner cannot show the requisite monetary harm. *Smith v. Nelson*, 53 S.W.3d 792 (Tex. App.-Austin 2001, pet denied). The Commissioner lacks jurisdiction over Petitioner's demotion claim.

Same Professional Capacity

A "teacher[2]" who holds a term contract under Texas Education Code chapter 21, subchapter E that is about to expire cannot be reassigned to a new position for the next school year unless the position is within the same professional capacity as the position the "teacher" held in the current school year:

> (a)  Not later than the 45th day before the last day of instruction in a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract.
> (b)      the board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

TEX. EDUC. CODE § 21.206.  The term "same professional capacity" is not defined in the Texas Education Code.  However, the Commissioner from the earliest substantive decision concerning this provision has held that "administrator" is a professional capacity.

> It is more reasonable to conclude that the legislature, by using the term "same professional capacity" (instead of "exact same position"), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual authority.  In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the teacher was assigned the previous year, as long as the position is one to which the district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year.  In some instances the validity of a particular placement will be clear.  For example, an administrator who does not receive the required notice by April 1[3] may not be placed in the capacity of a classroom teacher. . .
>     In other instances, the validity of a particular placement might not be so clear.  For example, a placement might be to another position within the same professional category (e.g., administrator), but nevertheless be invalid (e.g., from superintendent to assistant elementary school principal).  Factors to be considered

---

[2] The definition of "teacher" found at Texas Education Code section 21.201 is truly a creature of statute.  It includes individuals who would never in common speech be referred to as teachers.

[3] In the original Term Contract Nonrenewal Act, a district had to propose nonrenewal on or before April 1, instead of the current requirement of "the 45th day before the last day of instruction."  Term Contract Nonrenewal Act, 67th Leg., R.S. , ch. 765, § 2, 1981 Tex. Gen Laws 2847.

in determining the validity of such an assignment include, but are not limited to differences in authority, duties, and salary.

*Barich v. San Felipe-Del Rio Consolidated Independent School District*, Docket No. 117-R1a-484 (Comm'r Educ. 1985). Further, the Commissioner has found that the professional capacity of "administrator" is to be broadly interpreted:

> It is possible to imagine situations where the transfer clause of an employment contract would be held to be unenforceable under § 21.204(b) [4]. However, this is not such a case. It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to this law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. The need for flexibility in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me consistent with the policies of the TCNA.

*Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1993). In many cases, it will not constitute a violation of Texas Education Code section 21.206, for a district to reassign a term contract administrator from a position with one administrative job title to a position that has a different administrative job title.

As *Carpenter* indicates, what professional capacity a "teacher" holds is to a certain extent determined by the employment contract. However, districts are not completely free to determine what professional capacity a "teacher" has. A professional capacity must be a legitimate professional capacity. *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999). Petitioner's 2007-2008 contract is not in the record and there is not evidence in the record as to what Petitioner's 2007-2008 contract said as to the issue of Petitioner's professional capacity. Assuming that Petitioner's 2007-2008 contract[5] was for the professional capacity of administrator, this professional capacity encompasses principals. A district is not required to employee

---

[4] The old Texas Education Code section 21.204 is the predecessor of the current Texas Education Code section 21.206.

[5] Petitioner's 2008-2009contract is entitled "For Professional Administrator."

a principal in the professional capacity of principal. A district may employee a principal in the professional capacity of administrator. To determine if a district may reassign an administrator, who is employed as a principal, to another position, the two positions need to be compared.

<u>Principal and Program Specialist II</u>

Applying the factors noted in *Barich* is difficult in this case because the record is sparse as to issues of differences in authority, duties, and salary. While Petitioner contends that there is a significant difference in salary between her former principal position and the compensation that the salary schedules assigns to a Program Specialist II, Petitioner makes no citation to the record for this claim and the local record appears to lack such information. The record does indicate that for the 2008-2009 school year, Petitioner will retain the same salary and work days as Petitioner did for the previous school year. Local Record, Tab 3.

<u>Authority and Duties</u>

As to the comparison of authority and duties, Petitioner in her brief, after making citations to the Texas Education Code concerning the duties of principals, states:

> There are no like provisions detailing the legislature's expectations and demands of Program Specialists-whether category I, II, III, or MMIX. The only thing that can be said with certainly about Program Specialist is that they are *not* like principals in any meaningful way, shape, or form. Instead the position of Program Specialist II is a subordinate position at the Professional Development Center that contains no duties, responsibilities, or authority over the district's students.

It is true that the Texas Education Code does not detail duties or expectations for Program Specialists. As for the other claims, Petitioner fails to make citations to the record. However, it is true that as a Program Specialist II Petitioner reports to the Director of Professional Development. Local Record, Tab 3. Petitioner is correct that her new position does not give her authority over students. Local Record, Tab 7 attachment. It gives Petitioner responsibilities concerning all new teachers and district-

wide professional development. This is known from the job discretion for Professional Development Specialist that is the record. It is a general description. Petitioner was told by the Director of Professional Development what her specific responsibilities were to be but the more specific description is not in local record. The record fails to provide a clear picture of Petitioner's duties and responsibilities in her new job. As the grievant, Petitioner had the burden of proof before the board of trustees. Applying the *Barich* standards, a reasonable finder of fact could have concluded that Petitioner failed to meet her burden of proof that the two positions at issue are not in the same professional capacity. There is substantial evidence to support the denial of Petitioner's grievance.

Conclusion

Respondent did not violate Texas Education Code section 21.206, when it reassigned Petitioner.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1.    The Commissioner has jurisdiction to over Petitioner's Texas Education Code section 21.206 claim under Texas Education Code section 7.057(a)(2)(A).

2.    The Commissioner lacks jurisdiction over Petitioner's demotion claim. TEX. EDUC. CODE § 7.057(a)(2)(B).

3.    The Commissioner does not have jurisdiction over demotion claims based on Texas Education Code section 7.057(a)(2)(A).

4.    The Commissioner may have jurisdiction over a demotion claim if a violation of a written employment contract is alleged that causes or would cause monetary harm. TEX. EDUC. CODE § 7.057(a)(2)(B).

5.    The monetary harm referred to in Texas Education Code section 7.057(a)(2)(B) must be a contract damage. If an employee does not lose salary or

benefits based on an alleged violation of a written contract, the employee has not suffered monetary harm.

6. Because Petitioner did not suffer monetary harm as that term is used in Texas Education Code section 7.057(a)(2)(B), the Commissioner lacks jurisdiction over Petitioner's demotion claim.

7. Administrator is a professional capacity as that term is used in Texas Education Code section 21.206(b).

8. The professional capacity of administrator, as it applies to Texas Education Code section 21.206(b), is a broad professional capacity.

9. A "teacher" who is employed as a principal may be employed in the professional capacity of administrator. TEX. EDUC. CODE § 21.206(b).

10. To determine whether two positions are in the same professional capacity, a comparison should be made of any differences in authority, duties, and salary, along with any other relevant factors. TEX. EDUC. CODE § 21.206(b).

11. A grievant has the burden of proof before a school board.

12. As this case is an appeal of a school district's decision, the substantial evidence standard applies. TEX. EDUC. CODE § 7.057(c).

13. There is substantial evidence to support Respondent's determination that the two positions at issue that Petitioner held are not in different professional capacities. TEX. EDUC. CODE § 21.206(b).

14. Respondent did not violate Texas Education Code section 21.206(b) when it reassigned Petitioner from the position of elementary principal to the position of Program Specialist II.

15. The Petition for Review should be dismissed in part and denied in part.

Order

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, dismissed in part and denied in part.

SIGNED AND ISSUED this _____ day of _____, 2012.


_____
ROBERT SCOTT
COMMISSIONER OF EDUCATION

# APPENDIX 4

Title 19 Tex. Admin. Code §§150.1021; 150.1022;

Title 19 Tex. Admin. Code §229.3

# Chapter 150. Commissioner's Rules Concerning Educator Appraisal
## Subchapter BB. Administrator Appraisal

**Statutory Authority: The provisions of this Subchapter BB issued under the Texas Education Code, §21.354 and §39.054, unless otherwise noted.**

### §150.1021. Commissioner-Recommended Administrator Appraisal Process: Performance Domains and Descriptors.

(a) The domains and descriptors used to evaluate each administrator in a school district may include the following.

(1) Instructional management. The administrator promotes improvement of instruction through activities such as the following: monitoring student achievement and attendance; diagnosing student needs; helping teachers design learning experiences for students; encouraging the development and piloting of innovative instructional programs; and facilitating the planning and application of emerging technologies in the classroom.

(2) School or organization morale. The administrator fosters a positive school or organization morale through activities such as the following: assessing and planning improvement of the school, school district, or community environment; reinforcing excellence; promoting a positive, caring climate of learning; and using effective communication skills.

(3) School or organization improvement. The administrator promotes leadership in efforts to improve the school or organization through activities such as the following: collaborating in the development and articulation of a common vision of improvement; encouraging appropriate risk-taking; and ensuring continuous renewal of curriculum, policies, and methods.

(4) Personnel management. The administrator manages personnel effectively through activities such as the following: delegating appropriately; recognizing exemplary performance of teachers and staff; encouraging personal and professional growth and leadership among the staff; complying with applicable personnel policies and rules; securing the necessary personnel resources to meet objectives; and evaluating the job performance of assigned personnel.

(5) Management of administrative, fiscal, and facilities functions. The administrator manages administrative, fiscal, and facilities functions responsibly through activities such as the following: obtaining broad-based input for fiscal or financial analysis; compiling reasonable budgets and cost estimates; ensuring that facilities are maintained and upgraded as necessary; and managing a broad range of school operations (for example, attendance, accounting, payroll, transportation).

(6) Student management. The administrator promotes positive student conduct through activities such as the following: helping students develop a sense of self-worth; developing and communicating guidelines for student conduct; ensuring rules are observed uniformly; disciplining students for misconduct in an effective and fair manner; supporting collaboration by working with faculty; and encouraging the participation of students and parents.

(7) School or community relations. The administrator promotes a positive tone for school or community relations through activities such as the following: fostering collaborative educational efforts among members of the total school community; articulating the school mission and needs

to the community; seeking support for school programs; and involving himself or herself in community activities that foster rapport between the school district and the larger community.

(8) Professional growth and development. The administrator provides leadership in professional growth and development through activities such as the following: participating actively in professional associations; conducting himself or herself in an ethical and professional manner; disseminating ideas and information to other professionals; and seeking and using evaluative information for improvement of performance.

(9) Academic excellence indicators and campus performance objectives.

(10) School board relations (for superintendents only). The superintendent promotes and supports a positive relationship with the school district board of trustees through activities such as the following: meeting the board's needs for information; interacting with board members in an ethical, sensitive, and professional manner; demonstrating competence in written and verbal communications to the board; and recommending policies to the board to enhance teaching and learning.

(b) In developing appraisal instruments, the school district shall use the local job description as applicable.

(c) A student performance domain shall be included in the appraisal of principals and superintendents as follows.

(1) The principal promotes improvement of the performance of students on the campus through activities such as comparing campus disaggregated student performance results to state accountability standards and to prior year performance.

(2) The superintendent promotes improvement of the performance of students in the district through activities such as comparing district disaggregated student performance results to state accountability standards and to prior year performance.

*Source: The provisions of this §150.1021 adopted to be effective August 1, 1997, 22 TexReg 4200; amended to be effective June 11, 1998, 23 TexReg 5966.*

## §150.1022. Commissioner-Recommended Administrator Appraisal Process: Procedures.

(a) To provide school districts maximum flexibility, the following procedures for administrator appraisal are established as minimum requirements. Each district shall establish an annual calendar providing for the following activities that shall involve both the administrator and the appraiser:

(1) procedures for setting goals that define expectations and set priorities for the administrator being appraised;

(2) formative conference; and

(3) summative conference.

(b) Each school district shall involve appropriate administrators in developing, selecting, or revising the instruments and process.

(c) Before conducting appraisals, an appraiser shall provide evidence of training in appropriate personnel evaluation skills related to the locally established criteria and process.

(d) Each school district may implement a process for collecting staff input for evaluating administrators. If a school district implements a process for collecting staff input to evaluate administrators, the input must not be anonymous.

(e) Student performance shall be a part of locally developed appraisal instruments for principals as specified in Texas Education Code (TEC), §21.354 and §39.054 and for superintendents as specified in TEC, §39.054.

(f) Each school district, with the approval of the board of trustees, may select the commissioner-recommended student performance domain for principals or may develop an alternative governed by the process outlined in TEC, §21.354.

(g) Districts using the commissioner-recommended student performance domain for principals shall meet the following requirements.

(1) Principals and their appraisers whose districts adopt the commissioner-recommended student performance domain shall satisfactorily complete appraiser training with a trainer and curriculum approved by the commissioner of education. Periodic retraining shall be required.

(2) The commissioner-recommended student performance domain shall be implemented in accordance with procedures approved by the commissioner.

(3) The results on the commissioner-recommended student performance domain shall be incorporated into the local appraisal instrument.

(4) The results on the commissioner-recommended student performance domain shall be a primary consideration in determining a principal in need of assistance. An intervention plan shall be required for a principal whose results on this domain fall below the commissioner's established standards.

(5) For a principal new to the campus or for a new campus, the results from the commissioner-recommended student performance domain shall be on a "report only" basis during the first year. Dropout and attendance data for the principal shall be on a "report only" basis for the first two years.

(h) Each school district, with the approval of the board of trustees, may select the commissioner-recommended student performance domain for superintendents or may develop an alternative governed by the process outlined in TEC, §21.354.

(i) Districts using the commissioner-recommended student performance domain for superintendents shall meet the following requirements.

(1) Superintendents whose districts adopt the commissioner-recommended student performance domain shall attend an orientation approved by the commissioner.

(2) The results on the commissioner-recommended student performance domain shall be incorporated into the local appraisal instrument.

(3) The results on the commissioner-recommended student performance domain shall be a

primary consideration of the board in evaluating the superintendent.

(4) For a superintendent new to the district, the results from the commissioner-recommended student performance domain shall be on a "report only" basis during the first year. Dropout and attendance data for the superintendent shall be on a "report only" basis for the first two years.

*Source: The provisions of this §150.1022 adopted to be effective August 1, 1997, 22 TexReg 4200; amended to be effective June 11, 1998, 23 TexReg 5966; amended to be effective March 28, 1999, 24 TexReg 2021.*

**For additional information, email rules@tea.state.tx.us.**

[<<Prev Rule](#)                                                              [Next Rule>>](#)

# Texas Administrative Code

[TITLE 19](#)                    EDUCATION
[PART 7](#)                      STATE BOARD FOR EDUCATOR CERTIFICATION
[CHAPTER 229](#)            ACCOUNTABILITY SYSTEM FOR EDUCATOR PREPARATION
                          PROGRAMS
RULE §229.3                 Required Submissions of Information, Surveys, and Other Data

---

(a) Educator preparation programs (EPPs), EPP candidates, beginning teachers, field supervisors, school principals and administrators, campus mentors, and cooperating teachers shall provide to the Texas Education Agency (TEA) staff all data and information required by this chapter, as set forth in subsection (e) of this section and the Texas Education Code (TEC), §21.045 and §21.0452.

(b) Any individual holding a Texas-issued educator certificate who fails to provide information required by this chapter and the TEC, §21.045 and §21.0452, as set forth in subsection (e) of this section, may be subject to sanction of his or her certificate, including the placement of restrictions, inscribed or non-inscribed reprimand, suspension, or revocation.

(c) Any Texas public school that fails to provide information required by this chapter and the TEC, §21.045 and §21.0452, as set forth in subsection (e) of this section, may be referred to the commissioner of education with a recommendation that sanctions upon its accreditation status be imposed for failure to comply with this section and the TEC, §21.0452.

(d) Any open-enrollment charter school that fails to provide information required by this chapter and the TEC, §21.045 and §21.0452, as set forth in subsection (e) of this section, may be referred to the commissioner of education with a recommendation that sanctions be imposed for failure to comply with this section and the TEC, §21.0452.

(e) All required EPP data for an academic year shall be submitted to the TEA staff annually on September 15 following the end of that academic year. All surveys and information required to be submitted pursuant to this chapter by school administrators and principals shall be submitted by June 15 of any academic year in which the school administrator and principal have had experience with a candidate or beginning teacher who was a participant in an EPP. All surveys and information required to be submitted pursuant to this chapter by EPP candidates shall be submitted by August 1 of each academic year in which it is required.

(f) The following apply to data submissions required by this chapter.

  (1) EPPs shall provide data for all candidates as specified in the figure provided in this paragraph.

[Attached Graphic](#)

  (2) Participants in an EPP shall complete a survey, in a form approved by the State Board for Educator Certification (SBEC), evaluating the preparation he or she received in the EPP. Completion and submission to the SBEC of the survey is a requirement for issuance of a standard certificate.

  (3) Principals or designated administrators in Texas public schools and open-enrollment charter schools shall complete individual teacher performance surveys, in a form to be approved by the SBEC, for each

beginning teacher under the supervision of an EPP.

(4) Principals or designated administrators in Texas public schools and open-enrollment charter schools shall complete surveys, in a form to be approved by the SBEC, evaluating the effectiveness of preparation for classroom success for each EPP with which the principals or designated administrators have had experience in the previous year.

---

**Source Note:** The provisions of this §229.3 adopted to be effective April 18, 2010, 35 TexReg 2849; amended to be effective October 26, 2014, 39 TexReg 8395

Next Page       Previous Page

List of Titles       Back to List

HOME | TEXAS REGISTER | TEXAS ADMINISTRATIVE CODE | OPEN MEETINGS